UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

BETTY M. WOODS )
    Plaintiff )
)
v. ) NO. 2:09-CV-215
) MATTICE/CARTER
MICHAEL J. ASTRUE )
Commissioner of Social Security )
    Defendant )

REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Summary Judgment (Doc. 8) and defendant's Motion for Summary Judgment (Doc. 12).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423.

For reasons that follow, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was forty-seven years old on April 14, 2005, when she alleges she became disabled, and forty-nine years old at the time of the March 16, 2007 decision, making her a younger person under the Commissioner's regulations (Tr. 9-14, 61). See 20 C.F.R. § 404.1563(c). The ALJ found that Plaintiff had a high school education under the regulations,

1

meaning having abilities in reasoning, arithmetic, and language skills and the ability to perform semi-skilled to skilled work (Tr. 9). As for Plaintiff's vocational history, she previously worked as a cook and housekeeper, jobs described by the vocational expert as medium and unskilled and light and unskilled, respectively (Tr. 22, 33).

## Claim for Benefits

Plaintiff filed an application for disability insurance benefits, alleging she became disabled on April 14, 2005 (Tr. 61). The state agency that makes disability determinations for the Commissioner denied Plaintiff's application, and Plaintiff requested a hearing (Tr. 40, 42, 51). On January 18, 2007, Plaintiff testified at a hearing before Administrative Law Judge (ALJ) William T. Overton (Tr. 18-33). A vocational expert also testified (Tr. 33-36). On March 16, 2007, the ALJ issued a decision, finding that Plaintiff was not disabled because she retained the ability to perform light work with mild to moderate mental restrictions and that she could perform her prior work as well as a significant number of other jobs which accommodated her abilities, limitations, and vocational profile (Tr. 9-14). Thereafter, the Appeals Council denied review of the ALJ's decision (Tr. 1-3), making the March 16, 2007, decision the final decision of the Commissioner.

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner

employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990).

Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support

3

a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's degenerative disc disease, osteoarthritis, and anxiety/depression are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. The medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: to perform light exertion with mild to moderate mental restrictions.

7. The claimant's past relevant work as motel housekeeper did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

8. The claimant's medically determinable degenerative disc disease, osteoarthritis, and anxiety/depression do not prevent the claimant from performing her past relevant work or other work existing in significant numbers in the national economy.

9. The claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f)).

(Tr. 13-14).

## Issues Raised

Plaintiff argues the decision of the ALJ is not supported by substantial evidence. She asserts the ALJ failed to assess her abilities on a function-by-function basis, failed to explain how the medical evidence supported his conclusions and failed to properly discuss Plaintiff's work-related mental restrictions (Tr. 8).

## Relevant Facts

### Medical Evidence:

On April 15, 2005, Plaintiff was seen in the emergency room following a motor vehicle accident and complained of low back pain (Tr. 252-53). A few days later, she visited with Dr. Jones, a primary care physician, and reported pain in her low back, neck, and left thumb and some discomfort in the neck (Tr. 129-30). Testing showed degenerative disc disease in the upper back, lower back at L5-S1, and neck at C5-C6 and osteoarthritis in the left thumb (Tr. 173-76). Dr. Jones noted tenderness in the low back and neck but no radicular pain (Tr. 130). He assessed neck and back pain (Tr. 130). Plaintiff continued to complain of thumb pain at her next visit (Tr. 128). Dr. Jones referred Plaintiff for physical therapy (Tr. 126). Plaintiff told Dr. Jones that she could not return to her job because her employer did not have "light duty," and so she stated that she would be out of work while completing physical therapy (Tr. 128).

On May 9, 2005, Dr. Jones completed a form, stating that Plaintiff would be unable to work until May 19, 2005, while undergoing physical therapy (Tr. 124-25). On May 19, 2005, Plaintiff reported no improvement (Tr. 122). Dr. Jones recorded no tenderness in the neck or back and normal range of motion (Tr. 122). He noted "some" degenerative joint disease in the back and neck, and was not sure why Plaintiff had not improved more (Tr. 122). He

recommended referral to a physiatrist and ordered Plaintiff to return to "regular" work (Tr. 122-23).

Plaintiff's stated physical therapy goals were to stretch independently in a home exercise program, to have total alignment, and to be stable in the trunk (Tr. 262). The June 2005 discharge notes show that Plaintiff's treatment goals were met. She had relief of her symptoms, and had no problems with her home exercise program (Tr. 254).

In June and July 2005, Plaintiff treated with Dr. Marshall (Tr. 264-75). He prescribed Ultram[1] and Lidoderm patches, instructed Plaintiff to hold off on further testing to give her body an opportunity to recover, and noted her back and neck symptoms were stable (Tr. 264-71). In early August 2005, Dr. Marshall imposed "temporary" limitations, restricting Plaintiff from: lifting outside of ergonomically proper postures; repetitively bending or twisting; engaging in activities in which she could not change positions every two to four hours; engaging in high impact activities; repetitively lifting greater than two pounds; and occasionally lifting greater than five pounds (Tr. 286).

Testing in August 2005 showed spondylitic changes at C6-C7, T5-T6, and L3-L4 (Tr. 269, 272-74). Plaintiff told Dr. Marshall she did not think she could go back to her job and she had applied for disability (Tr. 269). Dr. Marshall explained to Plaintiff that if he were to order the same tests on one-hundred people, forty would come back with the same results as Plaintiff (Tr. 269). He suspected that at least some of her degenerative joint disease pre-dated the motor vehicle accident and wondered whether the test results justified permanent restrictions (Tr. 269,

---

[1] *Used to treat pain.* <u>Dorland's Illustrated Medical Dictionary</u> 1977, 2027 (31st ed. 2007).

270). He noted that the Lidoderm patches helped (Tr. 269). He encouraged Plaintiff to return to her job but commented her "primary focus" now was her disability application (Tr. 270). He recommended a functional study, hoped she would return to work with medication and some restrictions, and noted she was not "very receptive" to vocational rehabilitation (Tr. 270). In an addendum, he indicated that Plaintiff's insurance would not cover the cost of the functional study and stated that, without it, he would be guessing at her restrictions and so could not provide any permanent restrictions (Tr. 270).

In September 2005, Dr. Jones post-dated a work restriction form indicating that Plaintiff had been under temporary restrictions limiting her to a desk job, effective April 14, 2005, to June 9, 2005 (Tr. 293). Dr. Jones indicated that thereafter Plaintiff's restrictions were to be determined by her "specialist" (Tr. 293).

On October 17, 2005, Dr. Doster[2] reviewed the evidence and assessed Plaintiff's residual functional capacity (the most Plaintiff could do despite her limitations), 20 C.F.R. § 404.1545 (a)(1) (Tr. 276-83). He determined that Plaintiff could occasionally lift and carry up to twenty pounds, frequently lift and carry up to ten pounds, and sit, stand, and walk up to six hours in an

---

[2] *Plaintiff argues this assessment "does not appear to have been completed by a physician." Plaintiff's Motion for Summary Judgment ("Plaintiff's Brief," 14). The form identifies "Robert Doster" as the "Medical Consultant" and "19" as the "Medical Consultant's Code" (Tr. 283). Defendant asserts Nineteen is the code for specialty in internal medicine. The Social Security Administration's Program Operational Manual found at http://secure.ssa.gov/apps10/poms.nsf/lnx/0428085031 (Last visited November 16, 2010) provides a listing of codes in section DI 26510.090(d) which reflects code 19 to be INTERNAL MEDICINE. Defendant notes there is further evidence that Dr. Doster is, indeed, a medical doctor, the Disability Determination and Transmittal lists "Robert T. Doster M.D." as the reviewing "Physician or Medical Spec. Name" (Tr. 40) and, once again, "19" as his specialty code (Tr. 40). I conclude Plaintiff's suggestion that this assessment was not completed by a medical doctor is not supported by the evidence. (Tr. 40, 283).*

eight-hour day (Tr. 277). He further opined that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, crawl and frequently handle (gross manipulation) and finger (fine manipulation) with her left upper extremity with no limitation as to the right upper extremity (Tr. 278-79).

Plaintiff treated with Dr. Jones again in December 2006, at which time she reported feeling depressed, anxious, tearful, frustrated, and stressed (Tr. 288). She stated she did not want to hurt herself but had a thought of suicide; she said she just wanted to feel better and attend to some problems (Tr. 288). Dr. Jones referred Plaintiff to mental health (Tr. 288).

That same month, Plaintiff saw Dr. Kutty, who noted Plaintiff was "stressed out" (Tr. 347). Plaintiff described having crying spells and being in financial stress and unable to sleep (Tr. 347). She said that she thought of suicide the month prior but controlled herself; she said she felt helpless, hopeless, and without support (Tr. 346, 347). Dr. Kutty noted Plaintiff had no prior history of depression and was not taking medication (Tr. 347). He prescribed Cymbalta[3] and Xanax[4] (Tr. 346). At the next visit in January 2007, Dr. Kutty diagnosed questionable major depressive disorder, assigned a Global Assessment Functioning (GAF) score of 55,[5] discontinued

---

[3] *Used to treat depression. Dorland's Illustrated Medical Dictionary 465, 580 (31st ed. 2007).*

[4] *Used to treat anxiety. Dorland's Illustrated Medical Dictionary 55, 2113 (31st ed. 2007).*

[5] *A GAF of 51-60 indicates some moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (few friends, conflicts with peers or co-workers). American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2003).*

Cymbalta, and prescribed Effexor[6] (Tr. 344, 345).

Plaintiff's Testimony:

At the January 18, 2007 hearing, Plaintiff testified that she was in a motor vehicle accident in April 2005 (Tr. 23). She described "always" having had back pain, which radiated down her legs and into her arm (Tr. 23-25). She said that she treated her pain with heating pads and Lidoderm[7] patches, which she described as working "great... really good" (Tr. 28).

As it relates to her depression, Plaintiff stated she recently began seeing Dr. Kutty. As of the date of the hearing, she had been seen twice (Tr. 25-26). She testified to daily crying spells, which lasted one-half hour and reported that her medication, a generic form of Xanax, calmed her down (Tr. 30-31).

Plaintiff testified to driving, preparing meals for her family, and performing light household chores, with her daughter's help. She testified she has fatigue and lies down for an hour every day (Tr. 26, 32-33). She denied having any social life but acknowledged visiting her mother, who lived nearby (Tr. 27).

Testimony of the Vocational Expert:

The ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age and with Plaintiff's education and work experience who was limited to light work[8] and had

---

[6] *Used to treat depression and anxiety.* Dorland's Illustrated Medical Dictionary *602, 2074 (31st ed. 2007).*

[7] *An anesthetic.* Dorland's Illustrated Medical Dictionary *1048 (31st ed. 2007).*

[8] *Light work requires lifting no more than twenty pounds, frequent lifting or carrying up to ten pounds, a "good deal" of walking or standing, and, if it involves sitting most of the time, "some" pushing or pulling. 20 C.F.R. § 404.1567 (b). Generally, it requires intermittent sitting, occasional stooping, and six hours of standing or walking in an eight-hour day. Social Security Ruling ("SSR") 83-10, 1983 WL 31251 \*5.*

9

mild to moderate mental limitations (Tr. 34). The vocational expert testified that such a person could perform light work as a housekeeper, laborer, food preparation worker, hand packager, vehicle washer, inspector, janitor, stock clerk, and shipping and receiving clerk (12,500 regional jobs) (Tr. 34).

Analysis

In this case, the ALJ concluded Plaintiff had the residual functional capacity to perform light work with mild to moderate mental limitations (Tr. 13). Based on the vocational expert's testimony, the ALJ determined Plaintiff could perform her past work as a hotel housekeeper (Tr. 13). He also concluded that a significant number of jobs accommodated Plaintiff's abilities and limitations (Tr. 13). For reasons that follow, I conclude there is substantial evidence to support those conclusions.

The residual functional capacity finding must take into account all relevant evidence, including objective medical evidence, treatment, physicians' opinions and observations, as well as the plaintiff's own statements about her limitations. 20 C.F.R. § 404.1545 (declaring that the ALJ must weigh medical evidence and statements about symptoms to determine the residual functional capacity). The ALJ assessed these factors and determined Plaintiff retained the capacity for light work with mild to moderate mental limitations (Tr. 9-13).

The ALJ found that the medical evidence did not substantiate Plaintiff's allegations of disabling symptoms (Tr. 10-12). The ALJ noted Plaintiff met her physical therapy goals (Tr. 11, 254). He also observed that Dr. Marshall diagnosed spondylitic changes in Plaintiff's back and neck but suspected that those conditions may have pre-dated the motor vehicle accident (Tr. 11, 269, 272-74). The ALJ recited Dr. Marshall's attempts to reassure Plaintiff and to encourage her

10

to try to return to her job and noted his feeling that her "primary focus" was her disability application (Tr. 11, 270). The ALJ also cited the opinion of Dr. Jones, Plaintiff's primary care physician, that she could return to regular work (Tr. 11, 122-23). In addition, the ALJ recited Dr. Marshall's August 2005 temporary restrictions and Dr. Marshall's later assessment in late August 2005 that he would not be able to provide permanent restrictions without a functional evaluation, which Plaintiff stated she would not be able to obtain because of problems with her insurance (Tr. 11, 270). The ALJ noted the record did not show that Plaintiff saw Dr. Marshall further or that Dr. Marshall ever provided updated restrictions (Tr. 13).

The ALJ considered the opinion of Dr. Doster, a state agency physician, who determined Plaintiff could occasionally lift and carry up to twenty pounds, frequently lift and carry up to ten pounds, and sit, stand, and walk up to six hours in an eight-hour day (Tr. 11, 277). The ALJ explained that Dr. Doster further limited Plaintiff to occasional posturals and frequent fingering/handling with the left upper extremity (Tr. 11, 278-79). The ALJ gave Dr. Doster's opinion great weight, finding that it was the most consistent with the evidence (Tr. 13).

As for Plaintiff's mental limitations, the ALJ noted that there was no mental health treatment prior to December 2006, that there was no evidence of ongoing treatment by a mental health professional after January 2007, and that Dr. Kutty, in fact, diagnosed questionable major depressive disorder (Tr. 11-12, 344-48). Plaintiff's mental health treatment consisted of two visits with Dr. Kutty (Tr. 12). Nonetheless, given Plaintiff's claims and the findings of Dr. Kutty, the ALJ evaluated Plaintiff's limitations under the "Paragraph B" criteria (20 C.F.R. § 404.1520a), as required under the regulations, finding that Plaintiff had mild restrictions in daily living, moderate restrictions in maintaining social functioning, and mild difficulties in

11

concentration, persistence, or pace (Tr. 12). The ALJ, then, incorporated a finding of mild to moderate mental restrictions into the residual functional capacity finding (Tr. 12).

Finally, the ALJ noted Plaintiff's activities, which included driving, preparing meals for her family, and doing light household work (Tr. 12, 26-27, 32-33). Based on the medical evidence, opinion evidence, and Plaintiff's activities, the ALJ determined that Plaintiff was capable of performing light work with mild to moderate mental limitations (Tr. 10-13). Assessing Plaintiff's residual functional capacity ultimately rests with the ALJ. See 20 C.F.R. § 404.1546(c). And the ALJ's assessment, here, is supported by substantial evidence. Buxton, 246 F.3d at 772-73 (stating that the ALJ's findings are not subject to reversal merely because there may exist in the record substantial evidence to support a different conclusion... there is a "zone of choice" within which the ALJ can act without the fear of court interference).

Plaintiff argues that the ALJ failed to provide a function-by-function analysis. Plaintiff's Brief, 8. However, the ALJ found that Plaintiff could perform the full range of light work. In reaching this conclusion, the ALJ discussed in detail the pertinent medical evidence from Drs. Marshall, Jones, Kutty, and Doster, as well as Plaintiff's activities (Tr. 11-13). By definition, a finding that Plaintiff can perform the full range of light work means that she can lift no more than twenty pounds with frequent (up to two-thirds of the time) lifting or carrying of objects weighing up to ten pounds. SSR 83-10, 1983 WL 31251 *5-6. It requires standing and walking up to six hours in an eight-hour day and intermittent sitting. Id. It also requires occasional (up to one-third of the time) stooping and requires the use of the arms and hands to grasp, hold, and turn objects (gross manipulation) but generally does not require use of the fingers for fine activities. Id. I agree with Defendant, that Plaintiff's argument that the ALJ's assessment lacks

a function-by-function assessment fails because the ALJ found Plaintiff could perform the full range of light work, which is defined extensively under the rules and regulations, and is also described by Dr. Doster, whose opinion the ALJ assigned great weight (Tr. 13, 276-83). SSR 83-10 and 20 C.F.R. § 404.1567(b).

Plaintiff argues that, despite giving Dr. Doster's opinion great weight, the ALJ failed to incorporate all of Dr. Doster's limitations into the residual functional capacity finding (Tr. 13, 276-83). Plaintiff's Brief, 14-15. Specifically, Plaintiff claims the ALJ failed to incorporate Dr. Doster's postural and manipulative limitations (Plaintiff's Brief, 14-15). By definition, light work means frequent gross manipulation (grasping, holding, turning), which is the same as Dr. Doster's frequent gross manipulation restriction (Tr. 279). SSR 83-10, 1983 WL 31251 *5-6. Similarly, light work, by definition, requires occasional stooping, which is exactly the restriction found by Dr. Doster (Tr. 278). SSR 83-10, 1983 WL 31251 *5-6. Further, as to Dr. Doster's other restrictions relating to "occasional" balancing, kneeling, crouching, crawling and climbing ropes, ramps, ladders, scaffolds, and stairs, there is nothing suggesting that a light work limitation is inconsistent with such restrictions, given the "occasional" stooping restriction explicitly contained within the light work definition. Such postural limitations would also be consistent with the light work definition. SSR 83-10, 1983 WL 31251 *5.

Plaintiff further asserts that the ALJ "neglected to explain how the medical evidence support[ed] his conclusions." Plaintiff's Brief, 8. However, the ALJ provided detailed discussion of all the pertinent medical evidence, including the diagnostic, clinical, and opinion evidence as well as the temporary work restrictions provided by Plaintiff's treaters (Tr. 11-13). The ALJ explained that Dr. Marshall, one of Plaintiff's doctors who provided temporary

13

restrictions, declined to provide permanent restrictions, that Dr. Marshall also encouraged Plaintiff to return to work but found that Plaintiff's focus had become her disability application, and that the evidence failed to show that Plaintiff continued to treat with Dr. Marshall thereafter (Tr. 11-13, 269-70). The ALJ noted that Dr. Marshall expressed his suspicion that Plaintiff's degenerative joint disease may have pre-dated the motor vehicle accident and Plaintiff's primary care physician, Dr. Jones, had released her to return to work (Tr. 11, 122-23, 269). The ALJ concluded Dr. Doster's opinion, restricting Plaintiff to light work, was the most consistent with the medical evidence. The medical evidence actually contained no permanent work restrictions by any treating doctor (Tr. 13, 276-83). The ALJ neither rejected nor ignored the opinions of her treating doctors. The restrictions given were temporary and her treating doctors either released her to return to work (Dr. Jones) or declined to give permanent restrictions and advised her to try to return to work (Dr. Marshall) (Tr. 10-13, 122-23, 270).

Plaintiff argues the ALJ should have referred Plaintiff for a consultative psychiatric examination because of Plaintiff's "minimal treatment" for her mental condition. However, referral for a consultative examination is only required where there is insufficient evidence to make a disability determination. 20 C.F.R. § 404.1527(c)(3). (*See* Plaintiff's Brief, 11-13). In part, it was Plaintiff's minimal treatment that led the ALJ to conclude that Plaintiff's mental impairments were mild to moderate (Tr. 11-13, 344-48).

In his opinion, the ALJ addressed the limited history of mental health problems as follows:

> Subsequent to the hearing, medical evidence from Dr. I.N. Kutty of Psychiatric Associates was submitted by the claimant's attorney. That evidence reflects the claimant was seen by Dr. Kutty on December 27, 2006. He assessed questionable major depressive disorder and generalized anxiety disorder. He increased her

14

> Cymbalta and prescribed Xanax. When seen for follow-up on January 11, 2007, the claimant reported she was the same. Her Cymbalta was discontinued and she was prescribed Effexor XR (Exhibit 19F).
>
> The medical evidence indicates that the claimant has degenerative disc disease, osteoarthritis, and anxiety/depression, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. This conclusion is consistent with the documentary evidence of record. The undersigned is giving the claimant the benefit of the doubt regarding mental impairment as there is no indication of ongoing treatment by a mental health professional since her alleged onset date. In fact, the record is devoid of mental health diagnoses prior to December 2006. Because of the claimant's anxiety/depression, the undersigned finds the claimant experiences mild restriction in activities of daily living, mild to moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration/persistence/pace, and no episodes of decompensation of extended duration.

Tr. 12.

The ALJ noted that Plaintiff had never received mental health treatment prior to December 2006 and that, apart from two visits with Dr. Kutty, there was no evidence that Plaintiff had received mental health treatment after January 2007 (Tr. 12). Considering Dr. Kutty's diagnosis of questionable major depressive disorder, his GAF assessment indicating moderate symptoms, and Plaintiff's testimony, I conclude the ALJ's finding of mild to moderate mental limitations (Tr. 12) is reasonable and supported by the record. The vocational expert testified that a person with mild to moderate mental limitations (consistent with the assessed GAF score) could perform the jobs described. The GAF assessment, plaintiff's treatment with Dr. Kutty, as well as the lack of treatment before and afterwards, provided sufficient evidence from which the ALJ could assess Plaintiff's mental limitations.

As set out above, the standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Even if there is evidence on the other

side, if there is evidence to support the Commissioner's findings they must be affirmed. In this case I conclude there is ample evidence to support the findings of the ALJ. The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts.

## Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the

conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 12) be GRANTED, and plaintiff's Motion for Summary Judgment (Doc. 8) be DENIED.[9]

                                                  s/William B. Mitchell Carter
                                                UNITED STATES MAGISTRATE JUDGE

---

[9] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).